UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| COREY DAVIS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. 2:04CV00049 ERW |
| CHARLES TARR, et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendants' Motion for Summary Judgment [doc. #35]. Plaintiff is a prisoner in the Missouri Department of Corrections ("MDOC"). He has filed this suit seeking damages pursuant to 42 U.S.C. § 1983 for violations of his right to medical care guaranteed under the Fourteenth Amendment of the United States Constitution and freedom from selective prosecution on the basis of race guaranteed under the equal protection clause of the Fifth Amendment. Defendants seek summary judgment in their favor on all claims against them. For the reasons below, the motion is granted.

**I. BACKGROUND**[1]

On May 17, 2001, Plaintiff resided at 417 East Lee Street in Moberly, Missouri with his then-girlfriend, Tina Haselett. (Pl.'s Dep. 6). That evening, Plaintiff and Haselett engaged in a physical altercation. (Pl.'s Dep. 15). During the altercation, Haselett cut Plaintiff on the right side of his neck with a piece of broken glass (Pl.'s Dep. 17, Moberly Police Department Records,

---

[1] Defendants have adopted Plaintiff's version of the facts for the purposes of this motion, and Plaintiff does not dispute any of these facts pursuant to Local Rule 4.01(E) (1998).

1

0038). After checking whether Haselett was at the neighbor's house, Plaintiff went to his cousin's house and told her about the altercation. (Pl.'s Dep. 20). His cousin told him that he needed to report the altercation to the police, so Plaintiff then walked to the police department. (Pl.'s Dep. 21).

Plaintiff's wounds included a 2 inch cut on the right side of his neck, an injury to the left side of his face, and a cut near his underarm. (Pl.'s Dep. 26). All of these wounds bled profusely. (Pl.'s Dep. 26). He thought that the wound to the right side of his neck was life threatening because of the proximity of the wound to his jugular vein and the amount of blood loss. (Pl.'s Dep. 62-63). Part of the reason he walked to the police department was that he believed that his injury was severe, and that the police had a duty to take him to the hospital. (Pl.'s Dep. 22).

He arrived at the police department around 11:00 p.m. and was arrested by Defendant Brasher. (Pl.'s Dep. 23-25). After being arrested, Plaintiff requested medical assistance, but was told that he would have to wait until Defendant Tarr arrived. (Pl.'s Dep. 25). He requested medical assistance several times after this as well, however, Defendants stated that they were "not worried about [Plaintiff's] injuries" but instead "worried about [Haselett] right now." (Pl.'s Dep. 27). Plaintiff told Defendants that he wanted to file charges against Haselett for her part in the altercation. (Pl.'s Dep. 33).

When the paramedics arrived at the police department, Plaintiff informed them that he wanted to go to the hospital. (Pl.'s Dep. 26). Although Plaintiff signed a Randolph Count Ambulance District refusal of care form [doc. # 35], he alleges that it was the police who refused to allow the ambulance crew to take him to the hospital. (Pl.'s Dep. 36). Because the refusal of care form was dated May 18, 2001, it was after midnight when Plaintiff signed the document.

2

(Pl.'s Dep. 36-37).

Plaintiff was taken to the hospital between two and two and one half hours after his arrest. (Pl.'s Dep. 38). At the emergency room, he first saw a nurse, who informed him that from the appearance of his wound, it looked like someone tried to cause him great harm. (Pl.'s Dep. 40-41). Eventually, Plaintiff saw a doctor, but cannot remember how long he waited. (Pl.'s Dep. 42). According to the Moberly Regional Medical Center records [doc. #35.7], Plaintiff's wound was sutured by a doctor at 2:30 a.m.

According to the Randolph County Ambulance District report [doc. #35.6], the bleeding from Plaintiff's neck wound was controlled on its own. Furthermore, the Moberly Regional Medical Center records, 000095 [doc. #35.7] note that Plaintiff's triage priority was "non-urgent." According to the Affidavit of treating paramedic Chad LaMonda [doc. #35.9], a two and one half hour delay in treatment for Plaintiff's injury would have resulted in no serious complications. In fact, Mr. LaMonda opined that there was a twelve hour window before any complications, such as scarring, might occur. *Id.* The only present symptom Plaintiff exhibits from his injury is occasional itching. (Pl.'s Dep. 64).

According to Plaintiff, the police did not take a statement from Haselett until after he had been in the hospital. (Pl.'s Dep. 53). Moreover, Plaintiff alleges that a woman from the prosecutor's office wrote Haselett's statement for her. (Pl.'s Dep. 53). On June 28, 2001, Plaintiff wrote a letter to the chief of police again asking that charges be filed against Haselett. (Pl.'s Dep. 55). As a result of this letter, Defendant Tarr took a statement from Plaintiff. (Pl.'s Dep. 55-56). To Plaintiff's knowledge, Haselett has never been charged with any crime. (Pl.'s Dep. 57).

3

Plaintiff was charged with first degree burglary, kidnaping, and second degree domestic assault. (Pl.'s Dep. 51). He was tried and convicted by a jury on these charges in Missouri state court. (Pl.'s Dep. 58). He filed a direct appeal from this conviction, but it was denied. (Pl.'s Dep. 58). He is currently serving concurrent sentences of nine years. (Pl.'s Dep. 52).

Plaintiff brought selective prosecution claims against Defendants Tarr and Brasher, as well as the entire police department. (Pl.'s Dep. 52-53). Plaintiff believes that if Haselett was arrested, the jury would not have found him guilty. (Pl.'s Dep. 67-70).

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact.'" *Hufsmith v. Weaver*, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit under governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

4

Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Crumley*, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, quoted in *St. Jude Med., Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *Crumley*, 324 F.3d at 1006 (citing *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. *Anderson*, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. *Crumley*, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. *Matsushita*, 475 U.S. at 586. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a

gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. ANALYSIS

### A. Deliberate Indifference to Serious Medical Need

Plaintiff brings his suit pursuant to 42 U.S.C. § 1983. This Section states that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

Plaintiff claims that Defendants violated his constitutional rights by their deliberate indifference to his serious medical need. A serious medical need exists when a person "has been diagnosed by a physician as requiring treatment or [the need] is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). It is a violation of the Eighth Amendment to deny medical care for serious medical needs when the denial results in pain and suffering that serves no penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, in this case, Plaintiff was a pretrial detainee, and therefore his claim is analyzed under the Fourteenth Amendment. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (citation omitted). However, the Fourteenth Amendment analysis uses the same deliberate indifference standard as the Eighth Amendment analysis. *Id.* at 152-53.

In order to find a violation, the plaintiff has the burden of proving both a subjective and objective component. *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). First, the defendant must deprive the plaintiff of a right that is objectively "sufficiently serious" to rise to the

6

level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted). Second, the defendant "must have a sufficiently culpable state of mind." *Id.* (internal quotations omitted). "[T]hat [subjective] state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* Deliberate indifference exists when the prison official "knew of, yet disregarded, an excessive risk to his health." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997). Therefore, for Plaintiff to succeed in his claim that Defendants were deliberately indifferent, he "must evidence (1) he suffered from a serious medical condition, (2) defendants knew of the condition, and (3) defendants deliberately disregarded the condition." *Kitchen v. Miller*, 343 F.Supp.2d 820, 823 (E.D. Mo. 2004).

Here, Plaintiff argues that Defendants were deliberately indifferent to his serious medical need because the treatment for his neck wound was delayed. A stab wound to the neck can certainly rise to the level of seriousness as to be a constitutional violation. *See, Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir.1981) (holding that a broken hand can be a serious injury). However, when a Plaintiff alleges that a delay in medical treatment, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997). Therefore, when a plaintiff fails to introduce medical evidence showing the detrimental effect this delay caused, he or she cannot state a claim for deliberate indifference to medical need.[2] *Id.*

---

[2]Similarly, "[m]ere negligence is not sufficient to support a cause of action[.]" *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 97 U.S. at 106.

The case *Beyerbach v. Sears*, 49 F.3d 1324 (8th Cir. 1995), is instructive. In *Beyerbach*, an inmate's hand was broken in a cell door. *Id.* at 1325. Two to three hours passed before medical assistance was provided, two hours passed before ice arrived, and seventeen hours passed before x-rays were taken. *Id.* at 1325. The defendant introduced uncontroverted testimony from a doctor who stated that the delay would not have any negative effect on his broken hand. *Id.* at 1326-27. Thus, no constitutional violation was found because the inmate could not produce any evidence that the delay adversely affected his prognosis. *Id.* at 1327.

Other cases support the *Beyerbach* holding. *See, e.g., Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir.1995) (no violation where treatment for a broken finger was delayed, but ice, painkillers, and x-rays were eventually given); *Woods v. Cannon*, 83 F.3d 425 (8th Cir. 1996) (finding no violation after Plaintiff was shot, his wound was bandaged at the jail, and was finally taken to the hospital eleven hours after the shooting).

Like in *Beyerbach*, Plaintiff's treatment for his neck wound was delayed. Also similar to that case, Defendant introduced uncontested evidence that this delay had no detrimental effect on Plaintiff's prognosis. Here, the hospital and ambulance records clearly state that Plaintiff's injury was not urgent. Furthermore, Mr. LaMonda, the treating paramedic, opined that there could be a twelve hour delay before any complications would result. Plaintiff did not refute this evidence; he even admits that occasional itching is the only remaining effect of his injury.

Once a motion for summary judgment is made and supported, the non-moving party has

---

Treatment will only be considered inadequate if it is "grossly inappropriate or evidenced intentional maltreatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1241 (8th Cir. 1997). There is no evidence in this case of intentional maltreatment.

8

an affirmative burden to produce evidence beyond the pleadings which designate facts showing there is a genuine issue for trial. *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992). Because Movant failed to meet this burden, summary judgment on this ground will be granted in Defendants' favor.

**B. Selective Prosecution**[3]

In Plaintiff's Complaint [doc. #1], he argues that Defendants "[failed] to arrest my ex-girlfriend." Plaintiff elaborates on this allegation in his Opposition to Defendant's Motion for Summary Judgment [doc. #38]. In his Opposition, he claims that he was selectively prosecuted on the basis of his race under 42 U.S.C. § 1983. He argues that his ex-girlfriend was the aggressor in the conflict, but she was not charged with any crime because he is black and she is white.

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person or persons acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Taken alone, Movant's Complaint fails to state a claim under § 1983. The Complaint does not state the reason why his constitutional rights were violated (i.e., it does not mention race as the motivating factor). While he elaborates in his Opposition, the Complaint itself must state a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. Rule 8(a). Without amending his Complaint, Plaintiff

---

[3]Plaintiff's Complaint does not include allegations of selective prosecution, but Plaintiff indicated during his deposition that he intended to bring this claim again Defendants in this case and also the Randolph County Prosecuting Attorney. For purposes of thoroughness, the Court will address the selective prosecution issue in this Order.

9

fails to satisfy the Rule 8(a) pleading requirements.

Notwithstanding this failure, the Court will address the merits of Plaintiff's § 1983 claim. The equal protection component of the Due Process Clause of the Fifth Amendment precludes selective enforcement of the law based upon race. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (*citing Oyler v. Boles*, 368 U.S. 448, 456 (1962). A person claiming unequal enforcement of a facially neutral statute must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose. *Id.* at 465.

A plaintiff can establish discriminatory effect by showing that a person of another race violated the law but it was not enforced against them. *Id.* at 468-69. To show discriminatory purpose, a plaintiff must show the official's decision to enforce the law was at least partially based on race. *See, e.g., U.S. v. Brown*, 9 F.3d 1374, 1376 (8th Cir. 1993).

However, Plaintiff's § 1983 action fails on its merits.[4] In *Heck v. Humphrey*, the United States Supreme Court held that when the success of a § 1983 action for monetary damages depends on finding the plaintiff's prior criminal conviction to be invalid, he or she must first prove that the conviction was reversed, expunged, invalidated, or was the subject of a successful collateral attack. 512 U.S. 477, 486-87 (1994). If the plaintiff cannot prove this, he cannot state a claim for damages under § 1983. *Id.* The Court explained that this holding does not add an exhaustion requirement to a § 1983 action. *Id.* at 489. Instead, it totally precludes plaintiffs from stating a cause of action under § 1983 until they have attacked the previous conviction in

---

[4] In so holding, this Court does not decide whether it was Defendants who recommended Plaintiff for selective prosecution or whether this decision was made by another party, such as the prosecutor. For the reasons mentioned in this opinion, such a factual inquiry is unnecessary to this Court's determination of this issue.

question. *Id.* at 489. Claims of selective prosecution can fall within the *Heck* bar. *See Rogers v. Illinois Dept. of Corrections Special Evaluation Unit*, 160 F.Supp.2d 972 (N.D.Ill. 2001); *Norris v. Contra Costa County Judicial System*, 1995 WL 125467 (N.D.Cal. 1995); *Cobb v. Moore*, 1995 WL 358674 (N.D.Ind. 1995).

Clearly, Plaintiff alleges monetary damages in his Complaint (to be exact, he alleges $10 million, notwithstanding his employment-related damages). Therefore, the question is whether the success of Plaintiff's damage suit requires that his prior jury convictions for first degree burglary, kidnaping, and second degree domestic assault be deemed improper or illegal. Here, the practical effect of a judgment in Plaintiff's favor would be to invalidate his prior conviction. In order to rule in favor of Plaintiff, it would have to be shown that Missouri criminal law was enforced against him on the basis of race, in violation of the Equal Protection Clause. Surely, such a finding would invalidate his conviction. *See Rogers*, 160 F.Supp.2d at 977 ("[w]e cannot imagine . . . any set of facts under which a court could conclude that the plaintiffs were confined in violation of their equal protection rights, yet find that their confinement was nonetheless valid"). *See also, Auntrez Martin v. Harford County Sheriff's Dept.*, 2005 WL 1177930 (D.Md.,2005) (holding that judgment in favor of the plaintiff's selective prosecution claim regarding his drug indictments, arrests, and detention would certainly bring into question the validity of those actions).

However, because the success of Plaintiff's § 1983 action for damages depends on the invalidity of his prior conviction, his action cannot commence without the prior reversal,

expungement, or successful collateral attack of that conviction. *Heck*, 512 U.S. at 486-87.[5]

Because Plaintiff cannot state a claim under § 1983, there is no need to consider the affirmative defenses of collateral estoppel and qualified immunity. *See Heck*, 477 U.S. at 487 (refusing to consider the issue of state collateral estoppel after it was determined that plaintiff could not state a § 1983 claim). Therefore, Plaintiff's selective prosecution claim is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. # 35] is **GRANTED**.

**IT IS ORDERED** that Plaintiff's Complaint is **DISMISSED** with **PREJUDICE**.

An appropriate Order of Dismissal will accompany this Order.

Dated this 3rd day of November, 2005.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[5] Based on Plaintiff's deposition testimony (p. 69 ln. 23-25; p. 70 ln. 1-2, 15-20), he also apparently attacks the fact or duration of his sentence by his § 1983 motion. Like his claim for monetary damages, this relief was not stated in his complaint, but would fail based on its merits.

In *Preiser v. Rodriguez*, the Supreme Court held that plaintiffs cannot challenge the fact or duration of their confinement under § 1983. 411 U.S. 475, 488-90 (1973). Similar to an action for damages, challenging the fact or duration of confinement by its nature requires the overturning of the prior conviction. Instead, habeas corpus is the proper remedy for such a plaintiff. *Id.*